**Ralph D. SMITH, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 85A04–9504–CR–127.

Court of Appeals of Indiana.

Nov. 19, 1996.

Transfer Granted Jan. 22, 1997.

Kristina L. Lynn, Wabash, for Appellant.

Pamela Carter, Attorney General, James D. Dimitri, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

Following a jury trial, Ralph D. Smith (Smith) was convicted of one count of child molesting as a Class C felony,[1] and one count of attempted child molesting as a Class B felony.[2] Upon appeal, he presents two issues for review; however, because one is dispositive, we consider it alone:

Whether Smith received ineffective assistance of counsel when his trial attorney failed to move to suppress and object to the admission of Smith's confession? [3]

We reverse.

Stated most favorably to the judgment, the facts reveal that in May 1991, Smith and his first wife, Melanie, separated. In September of that year they commenced formal dissolution proceedings. From May until September, Melanie maintained primary custody of the couple's daughter, S.S., who was born in September 1990, and Smith saw S.S. primarily at the home of Melanie's parents. In September 1991, a formal visitation schedule was arranged, by which Smith had custodial visitation with S.S. every other weekend, and on alternating Thursdays. Until January 1992, Smith's custodial visitation sometimes occurred at the home of his mother, with whom Smith was living at the time. Custodial visitation also occurred at the home of the parents of Amanda Moorehead (now Amanda Smith), with whom Smith was involved romantically throughout the separation, and whom he married subsequent to the dissolution from Melanie. The custody and visitation arrangement devised in September 1991 continued after the dissolution was finalized in approximately April 1992.

In March 1992, S.S., then eighteen months old, began to exhibit apparently abnormal behavior following a visit with Smith. She began to fondle herself, and would often state that she did not want to return to her father, whom she would refer to as "Ralph". When asked by Melanie why she was referring to her father by his first name instead of as

---

1. At the time of Smith's offense, the portion of Indiana's child molesting statute which gave rise to Smith's C felony conviction, provided in relevant part:

   "A person who, with a child under twelve (12) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony." I.C. 35–42–4–3(b) (Burns Code Ed. Repl.1994).
   A 1994 amendment changed the relevant age of the child from 12 to 14 years. See I.C. 35–42–4–3(b) (Burns Code Ed. Supp.1995).

2. See I.C. 35–42–4–3(a) (Burns Code Ed. Repl. 1994), which, at the time of Smith's offense, provided in relevant part: "A person who, with a child under twelve (12) years of age, performs or submits to sexual intercourse or deviate sexual

conduct commits child molesting, a Class B felony." Like subsection (b), this provision was amended in 1994 to raise the relevant age of the child from 12 to 14 years. See I.C. 35–42–4–3(a) (Burns Code Ed. Supp.1995); n.1, supra. An amendment effective July 1, 1996, raises the level of offense for a violation of subsection (a) by a person 21 years of age or older, to a Class A felony. See 1996 Ind. Acts 216, § 18.

   Smith was charged and convicted of attempted child molesting pursuant to Indiana's attempt statute, I.C. 35–41–5–1 (Burns Code Ed. Repl. 1994), which provides, in relevant part: "A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime."

3. Appellate counsel for Smith did not represent the defendant at trial.

"Daddy", which was typical, S.S. replied that she called him "Ralph" when she was mad at him, or he was mad at her.

. Concerned by this behavior, Melanie met in March with a representative of the Miami County Department of Public Welfare (DPW), who referred her to Dr. Neil Stalker, a pediatrician, so that Dr. Stalker could examine S.S. for signs of abuse. Dr. Stalker examined S.S. in March 1992, but found no evidence symptomatic of sexual abuse. Nonetheless, S.S. continued, with increasing frequency, to display the type of behavior earlier noted.

On a Sunday in November 1992, following a Thursday visit with Smith, Melanie was attempting to toilet train S.S. After leaving S.S. on the toilet for a moment to answer a phone call, Melanie returned to find blood on the hands, thighs and shins of S.S. Melanie cleaned S.S. and took her to the hospital, where she was again referred to Dr. Stalker. Dr. Stalker again examined S.S., and this time found evidence of thickening in her hymen, as well as a scar on her hymen. Dr. Stalker further observed the presence of condyloma acuminata lesions, otherwise known as venereal warts, on both the hymen and the anus of S.S. At Smith's trial, Dr. Stalker testified that the scarring and thickening in the hymen were likely caused by "a penetrating injury", and that the scarring and thickening were consistent with a penetration by a finger up to the first knuckle. Record at 202–03. He further testified that the most common way for a child the age of S.S. to contract the venereal warts was through sexual contact, though he acknowledged that the warts could be contracted through the birth canal, and that some physicians believe they can also be transmitted when a person with the warts on their hands comes in contact with the child.

In January 1993, acting upon a request from DPW, the Indiana State Police (ISP) began an investigation into the possible abuse of S.S. Pursuant to that investigation, ISP investigator Robert Brinson (Brinson) interviewed Smith in February 1993 at the ISP post in Peru. During the interrogation, Smith signed a form entitled "ADVICE OF RIGHTS—INTERROGATION", which indi-

cated that he had been advised of his constitutional rights and agreed to waive them. Record at 218. Smith also gave an audiotape statement in which he acknowledged that he had been given his rights, that he understood the rights, and that he agreed to waive his rights.

In the taped statement, Smith admitted to two instances in which he had touched S.S. in a sexual manner. In one instance, Smith stated that, while giving S.S. a bath, he briefly inserted his middle finger into her vagina up to the first knuckle. After removing his finger, he put S.S. to bed, and returned to the bathroom, where he masturbated. In the other instance, which occurred the following morning, Smith "rubbed" the vagina of S.S. with both his hand and his penis after changing her diaper. Record at 23. Smith stated that, during the incident, S.S. was standing in front of him while he was on his knees, and he acknowledged that he rubbed his penis between her legs in an "in and out" manner by moving his hips. Record at 23. After rubbing his penis against the vagina of S.S., Smith masturbated. Smith stated that those were the only occasions on which he engaged in any conduct of a sexual nature with S.S.

Testifying on his own behalf, Smith admitted giving the statement, but claimed that the statement was false. Smith alleged that he gave the statement only after Brinson refused his request to leave (Smith was not under arrest at the time). According to Smith, when he indicated that he wanted to leave the police post, Brinson warned him that if he wanted to leave, "you have to go through me." Record at 313. Smith, who claimed that he was afraid of police because his father had been killed by a police officer, interpreted this statement to mean that he would be hurt by Brinson if he attempted to leave. Smith also asserted that Brinson refused his request to speak to a lawyer prior to giving the taped statement. When cross-examined by Smith's counsel, Brinson denied Smith's allegations.

To bolster Smith's assertions, the defense introduced the testimony of a psychologist who had examined Smith and concluded that he was of borderline intelligence, susceptible

to pressure, and easily intimidated. Further, the defense elicited from Brinson that the interrogation of Smith at the police post had lasted for over four hours when the confession was obtained, and that pressure had been applied to Smith throughout the interrogation.

Despite the length of the interrogation, the only testimony from law enforcement officers which appears in the trial transcript is Brinson's, who spoke with Smith for only a brief period of time at the end of the interrogation session. No testimony was heard from a Sergeant James, who conducted the interrogation of Smith for approximately the first 3½–4½ hours that Smith was at the post.[4] Smith claimed that, while he was being interrogated by James, James refused his request to leave the interrogation room. Brinson also testified that he had listened to the majority of James' interrogation of Smith, and his interrogation of Smith following James' was intended to be "just a second interviewer ... interviewing him in a different style....[D]o it soft and gentle ... from what he had met before." Record at 225.

Smith argues that, because his trial counsel failed to make a motion to suppress and failed to object at trial to the introduction of Smith's confession, which Smith contends was false and coerced, he was denied effective assistance of counsel. We are compelled to agree.

The standard by which we review trial counsel's performance is well-settled. To demonstrate his counsel's ineffectiveness, Smith must satisfy a two-part test. First, he must show that: 1) his counsel's performance fell below an objective standard of reasonableness, and 2) it is reasonably probable that, but for his counsel's deficient performance, the result of the proceedings would have been different. *Stroud v. State* (1992) Ind.App., 587 N.E.2d 1335, 1338, *trans. denied* (citing *Strickland v. Washington* (1984) 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh'g denied*). Further, because counsel is presumed to be competent, these elements

must be demonstrated by strong and convincing evidence. *Id.; see also Garrett v. State* (1992) Ind., 602 N.E.2d 139, 141, *reh'g denied.*

Where, as here, an ineffective assistance claim is predicated upon the failure to make an objection, *Stroud, supra,* 587 N.E.2d at 1335, holds that a defendant must show that had the objection been made, the trial court would have sustained the objection. Further, as both Smith and the State correctly note in their briefs, had an objection or a motion to suppress been made, the trial judge would have held a hearing outside of the presence of the jury to determine whether the confession was in fact voluntary, *Morgan v. State* (1995) Ind.App., 648 N.E.2d 1164, 1169–70, and at that hearing the State would have had the burden of proving the voluntariness of the confession beyond a reasonable doubt. *Id.* It is this salient factor which was not considered or addressed in *Stroud* or other cases enunciating the principle that reversal requires proof that, as a matter of law, the objection would have been sustained.

Smith relies in his brief upon the proposition that, had the trial court held such a hearing, it would necessarily have ruled the confession inadmissible. He supports this assertion by pointing us to his trial testimony concerning the statements allegedly made by Brinson and James at the IPD post, along with the length of the interrogation, and the psychological testing Smith underwent prior to trial showing his susceptibility to pressures. The State counters by referencing Brinson's testimony, which was contrary to the version of events presented by Smith. Given the conflicting version of events, we cannot say with certainty that the trial court would, as Smith asserts, necessarily have ruled the confession inadmissible had Smith's counsel interposed an objection. *Cf. Anderson v. State* (1984) Ind., 466 N.E.2d 27, 32 (appellate court review of preliminary determination of voluntariness is limited to whether there was "substantial evidence of probative value to support the trial court's

---

4. The amount of time Smith was interrogated by James and Brinson, respectively, was disputed. Smith testified that Brinson interrogated him for about an hour prior to the confession, while Brinson testified that he spoke with Smith for only about ten minutes prior to the confession.

finding," even where conflicting evidence is presented).[5]

■ Smith's counsel was clearly aware that the voluntariness of the confession was an important issue in the case; indeed, challenges to the confession—in the form of cross-examination of Brinson, psychological testing of Smith, and the testimony of Smith himself—formed a significant portion of Smith's defense. It thus appears that the decision to seek to undermine the confession at trial instead of exclude it was a "tactical" decision. We have often noted that a decision by trial counsel to explain, rather than exclude evidence is a matter of strategy which we generally will not second-guess, even if it appears that the decision may have been ill-founded. *See Mullins v. State* (1987) Ind., 504 N.E.2d 570, 573; *Clark v. State* (1992) Ind.App., 597 N.E.2d 4, 10, *trans. denied; cf. Payne v. State* (1995) Ind.App., 658 N.E.2d 635, 642, *trans. denied* ("Isolated poor strategy, inexperience, or questionable tactics do not necessarily amount to ineffective counsel."). However, simply denominating a decision by trial counsel as one of "strategy" or "tactics" does not place the decision entirely beyond the scope of our review. In *McBride v. State* (1992) Ind.App., 595 N.E.2d 260, 262–63, *trans. denied,* it was stated that "[C]ourts of appeal will not second guess questions of strategy and tactics *unless the choice readily appears to have been so poor that no reasonable lawyer would have been tempted by it.*" (emphasis supplied). Likewise, in *Pemberton v. State* (1990) Ind., 560 N.E.2d 524, 527 our Supreme Court held that failure of defense counsel to object at trial to an in-court identification constituted ineffective assistance where: "There is no conceivable rational basis upon which to predicate a decision to not object. This can in no way be characterized as a strategical or tactical decision gone awry."

Given the circumstances of this case, in which the evidence identifying Smith as the perpetrator of injuries to S.S. consisted almost entirely of his confession, we are unable to impute a rational basis in trial strategy to Smith's counsel's decision not to challenge the admission of the confession prior to trial. *See People v. Brinson* (1980) 2d Dist., 80 Ill.App.3d 388, 35 Ill.Dec. 721, 399 N.E.2d 1010 (conviction reversed where defense counsel did not move to suppress or object to introduction of confession, because "in view of the defendant's detailed story about the circumstances preceding his confession, indicating it was induced by coercion and intimidation, we think defense counsel would normally be expected to move for suppression of the confession on the ground it was not voluntary", even though "it is entirely possible that after the hearing the motion to suppress would have been denied"). *See also Pemberton, supra.* A successful challenge to the admission of the confession would have dealt a serious, probably fatal, blow to the State's case against Smith.[6] Further, it is of course well-settled that the defendant does not lose or in any way prejudice his right to argue the voluntariness of his confession at trial to the jury simply because a preliminary challenge to the confession's admissibility before the trial judge has failed. *See Morgan, supra,* 648 N.E.2d at 1169–70. Thus, seeking preliminarily to exclude the confession appears to have been a risk-free tactic which had the potential to virtually eviscerate the State's case against Smith. Given that Smith's defense was based so heavily upon attacking

---

5. We have treated Smith's arguments concerning the objection and motion to suppress together, although we recognize that in general, the decision whether to file particular motions is considered a matter of trial strategy. *Little v. State* (1986) Ind., 501 N.E.2d 447, 449. Given that the trial court would have taken the same action—holding a hearing into the voluntariness of the confession—if Smith's trial counsel had undertaken either course of action, we take Smith's argument in effect to be that, either through a motion to suppress or an objection, his trial counsel should have sought to prevent the jury from hearing about Smith's confession.

6. In this regard, we note that significant exculpatory evidence was presented by the defense, including the fact that both Smith and Amanda tested negative for the presence of genital warts or lesions, and the fact that Melanie tested negative for the presence of any sexually transmitted diseases. It was established at trial that it would require contact with the warts in some form for them to be transmitted, and that these warts were unlikely to disappear without treatment.

the confession—to the point of submitting expert testimony at trial tending to show Smith's susceptibility to pressures—we cannot understand what rational basis in trial strategy might have been served by Smith's trial counsel's decision. *See Pemberton, supra; cf. McBride, supra* at 262 ("[A] single error [by trial counsel] may be of such magnitude as to constitute a denial of effective assistance.").[7] We conclude, under the circumstances of this case, that Smith's trial counsel's failure to object to the admission of his confession fell below the "objective standard of reasonableness" component of the ineffective assistance test.

We also conclude that Smith has satisfied the "prejudice" component of the ineffective assistance test. We recognize that this conclusion might be perceived as somewhat at odds with the rule that one must demonstrate that an objection would have been sustained if properly made in order to demonstrate prejudice, *see Vega v. State* (1995) Ind.App., 656 N.E.2d 497, 504, *trans. denied;* nonetheless, the prejudice suffered by Smith from counsel's failure to object was sufficient here. We think this conclusion is justified in light of our supreme court's decision in *Pemberton, supra,* 560 N.E.2d 524. In *Pemberton,* defendant's trial counsel failed to object to an in-court identification of the defendant, when the identification was based in part upon a pre-trial lineup procedure our supreme court had disapproved of in a related case.[8] It could not be shown, however, that a timely objection would have been sustained, since it was not clear whether there was an adequate basis for the in-court identification independent of the disapproved pre-trial lineup procedure (the court had held in the related case that there was an adequate other basis with respect to the defendant in that case).

Nonetheless, our Supreme Court held that the defendant had suffered sufficient prejudice to justify a reversal based upon ineffective assistance. Writing for himself, Chief Justice Shepard and Justice Dickson (over the dissent of Justices Givan and Pivarnik), and noting that it was a "close case" whether there was sufficient basis for the in-court identification other than the disapproved procedure, Justice DeBruler observed that the following result of trial counsel's failure to object sufficed to demonstrate prejudice to the defendant:

"As a result of trial counsel's failure to object to the identification testimony when offered at trial, appellant was robbed of an in-court ruling by the trial judge resolving that close case. Such a ruling involves determinations of credibility and weight of evidence produced at both the pre-trial hearings on any motion to suppress and any material trial evidence. Further, such a ruling invokes in the trial court a heightened sense of constitutional responsibility, a sense of finality, and an awareness of impending appellate oversight. Finally, as a result of his attorney's failure to object at the appropriate time, appellant also lost the opportunity to make later in-trial or post-trial motions, reasserting the claim of inadmissibility before the judge as trier of fact." 560 N.E.2d at 527 (citation omitted).

We think Smith suffered like prejudice. By his counsel's failure to object to the admission of the confession, Smith was denied the opportunity for the trial judge to weigh the confession's voluntariness at a hearing— a hearing at which the State would have borne the burden of proving the voluntari-

---

7. We note that the State's brief does not provide much assistance as to what rational trial strategy might have been served by Smith's counsel's decision. The State merely asserts that "counsel made a judgment call in not choosing to move to suppress the confession, realizing that the trial court probably would not have granted the motion." Br. of Appellee at 7. This does not begin to explain why, if Smith's defense was based in large part on discrediting the confession on the grounds that it was false and coerced, counsel did not seek first to exclude the confession entirely when, if that effort had been successful, it would have obviated the need to explain the confession to the jury.

The State's other proffered explanation—that Smith's counsel did not object to the admission of Smith's confession because he realized that *corpus delicti* could be established—is inapposite, since failure to object to the admission of the confession on *corpus delicti* grounds does not form the basis of Smith's asserted ineffectiveness claim on appeal.

8. *See Wethington v. State* (1990) Ind., 560 N.E.2d 496.

ness of the confession beyond a reasonable doubt. *See Morgan, supra,* 648 N.E.2d at 1169–70. Further, while we have already noted *supra* that we cannot say with certainty what the outcome of a suppression hearing would have been, we observe again that there was evidence apart from simply Smith's account of the events surrounding the interrogation which may well have supported Smith's claims, such as the length and circumstances of the interrogation, prospective testimony from Sergeant James, the principal interrogator, as well as expert testimony concerning Smith's susceptibility to pressures.[9]

Under these circumstances, and considering that the confession was of such vital importance to the State's case against Smith, we conclude that adequate prejudice would lie in the loss of the opportunity to receive a judicial ruling on the confession's voluntariness. Parenthetically, we note that trial counsel in *Pemberton* had in fact filed a pretrial motion seeking suppression of the identification, and "argued vigorously" that the testimony concerning identification should be suppressed at a hearing on that motion. 560 N.E.2d at 526. Thus, the defendant in *Pemberton* at least had the benefit of a judicial ruling upon the issue, albeit one which, according to our Supreme Court, was not adequate by itself to protect the defendant's constitutional right to effective counsel. Smith received no such ruling at any point during his trial.

Further, as noted by Justice Givan in dissent, while *Pemberton* may have been a "close case" with respect to whether there was sufficient alternative basis for the in-court identification, it was not a close case with respect to the guilt or innocence of the accused. Indeed, Justice Givan observed that there was "overwhelming circumstantial evidence of guilt of both appellant and [the

defendant in the related case], even if the victims of the crime had been unable to identify either man." 560 N.E.2d at 527 (dissenting opinion). By contrast, as noted *supra,* the State's case against Smith was necessarily based overwhelmingly upon his confession, and there was exculpatory physical evidence presented. *See footnote 6, supra.* Thus, to the extent that the defendant in *Pemberton* received a judicial ruling upon the identification issue, and to the extent that the identification was only one part of a tight case against the defendant, the prejudice suffered by Smith appears to have been of even greater significance.

In elaborating upon the "prejudice" component of the ineffective assistance test, the United States Supreme Court in *Strickland, supra,* stated that counsel's deficient performance adequately prejudiced the defendant's rights when there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the trial. 466 U.S. at 694, 104 S.Ct. at 2068. Upon consideration of the circumstances surrounding the procurement of Smith's confession, combined with the importance of the confession to the State's case against Smith, our confidence in the outcome of this trial has been undermined sufficiently to conclude that Smith should receive a new trial.

■ We emphasize finally that we are not intending to create, and our opinion should not be read to support, a *per se* rule that adequate prejudice to support an ineffectiveness claim may be shown by the failure to receive a judicial ruling on the admissibility of disputed evidence. Our holding, akin to our Supreme Court's in *Pemberton,* simply recognizes that, under circumstances where

---

9. This should not necessarily be read to express disapproval on our part of the interrogation techniques utilized in this case, or suspicion concerning the circumstances surrounding the interrogation of Smith by Sergeant James. We note these events only to demonstrate that, while we cannot say that Smith would have been successful at a suppression hearing, the record presented to us suggests that there are facts *apart from Smith's*

*account* of the events that transpired during the interrogation which could tend to suggest that, at a minimum, it would not have been futile for Smith's counsel to seek preliminarily to exclude the confession. *See Garrett, supra,* 602 N.E.2d at 141 (attorney who had unsuccessfully moved to suppress defendant's inculpatory statements not ineffective for failing also to make objection "which had no hope of success").

there can be no rational basis in trial strategy not to object to the admission of certain evidence, *and* where it appears that there was a reasonable probability (as demonstrated not simply by the defendant's vehemence, but by other circumstances) that such an objection would have been sustained, *and* such an objection, if successful, would have been of tremendous benefit to the defense effort (in the instant case to the point of dismantling the State's case against Smith), adequate prejudice may lie in the failure to make such an objection, even where it cannot be conclusively shown that the objection would have been sustained.

We reverse Smith's conviction and remand for further proceedings consistent with this opinion.

NAJAM, J., concurs.

FRIEDLANDER, J., dissents and files separate opinion

FRIEDLANDER, Judge, dissenting.

I respectfully dissent from the majority's conclusion that Smith received ineffective assistance of trial counsel.

The critical issue in the instant case is the admissibility of the statement given to the police by Smith. In the statement, Smith admitted that he had molested S.S. and gave a detailed account of his actions in committing several molestations. Smith's counsel did not object when the statement was offered into evidence and Smith now claims that the failure to do so constituted ineffective assistance of counsel.

To prevail upon such a claim, without regard to the particular nature of the act or omission in question, a defendant must show not only that the performance was deficient, but also that it resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Turner v. State*, 580 N.E.2d 665 (Ind.1991). In evaluating the first element of the *Strickland* test, we are bound to observe the principle that decisions that may be characterized as matters of trial strategy will not supply the basis for a finding of ineffective assistance of counsel. *Stroud*, 587 N.E.2d 1335. Even poor strategy and bad tactics

may not amount to ineffective assistance. *Id.*; *Mullins*, 504 N.E.2d 570. The decision to explain evidence rather than attempt to have it excluded is a matter of strategy. *Mullins*, 504 N.E.2d 570.

The majority acknowledges that the decision not to object to the statement was a tactical one, but concludes that it had no rational basis in trial strategy. The majority states that "the choice appears to have been so poor that no reasonable lawyer would have been tempted by it." *Op.* at 772 (quoting *McBride v. State*, 595 N.E.2d 260, 262–63 (Ind.Ct.App.1992), *trans. denied*). Utilizing the standard enunciated in *McBride*, the majority determines that the decision was so irrational that it cannot withstand even the deferential review we are constrained to apply when considering challenges to the effectiveness of trial counsel. I do not agree.

At trial, Smith's counsel attempted to challenge the validity of the confession through the cross-examination of Officer Brinson and through the testimony of Smith himself. Counsel attempted to convince the jury that at the time he gave the statement, Smith had a legitimate reason to fear police, that he did in fact fear the police, and that the officers conducting the interview badgered and intimidated him into confessing. Counsel also introduced evidence that Smith had a limited mental capacity. Taken together, it was not totally unreasonable for counsel to believe that Smith could have been rendered a sympathetic, easily coerced figure in the jury's eyes.

I also cannot agree with the majority's conclusion that the failure to object constituted ineffective assistance because the State's case "consisted almost entirely of [Smith's] confession." *Op.* at 772. It was undisputed that S.S. had been molested. Therefore, the critical evidence to be examined, which the majority infers was practically nonexistent, was that tending to identify Smith as the molester.

The evidence favorable to the judgment demonstrated that each discovery of S.S.'s physical symptoms of molesting was made shortly after S.S. returned from visits with Smith. Also coinciding with her return from

such visits, S.S. exhibited behavior associated with molestations of young children, including fondling herself, being temperamental, and saying that she was angry at Smith and did not want to visit him again. In my view, such evidence of guilt, though circumstantial, was not insubstantial. I therefore do not agree that the first element of the *Strickland* test was satisfied, i.e., that the strategy was totally devoid of merit.

Leaving aside the question of the reasonableness of the strategy, I am most troubled by the majority's conclusion with regard to the second element of the *Strickland* test, i.e., that a finding of ineffective assistance of counsel may be based upon the failure to object to evidence, even if it is unclear that the objection would have been sustained. The majority correctly concedes that *Stroud* holds that in order to succeed on a claim of ineffective assistance of counsel based upon failure to interpose an objection, a defendant must show that the objection would have been sustained. The relevant portion of *Stroud* reads as follows:

> When an appellant predicates an ineffective assistance of counsel claim on counsel's failure to interpose an objection, the appellant must demonstrate that a proper objection would have been sustained by the trial court.

*Id.* at 1338. Neither in the above passage nor in the discussion that follows did the *Stroud* court indicate that the defendant's burden may be relaxed under certain circumstances. The court's holding that an appellant *"must* demonstrate" that the objection would have been sustained was both unequivocal and unconditional. Nevertheless, the majority concludes that the exception is necessary here because the alleged ineffective assistance precluded the presentation of evidence that would enable this court to determine whether an objection would have been sustained. I disagree.

The presumption of competent representation may only be overcome by strong and convincing evidence. *Short v. State,* 539 N.E.2d 939 (Ind.1989). Officer Brinson's testimony regarding the taking of Smith's statement indicated that the statement was voluntary and uncoerced. Smith's version differed

significantly, however, from Officer Brinson's. The majority concludes that the conflicting accounts render this court incapable of determining whether Smith could have met his burden to demonstrate that an objection would have been sustained. I believe that our standard of review in the instant case precludes us from engaging in such speculation. The mere presence of conflicting accounts with regard to the circumstances of the interview, without more, hardly constitutes clear and convincing evidence such as is necessary to overcome the presumption of competent representation. *Id.*

*Stroud* is representative of a long line of cases that impose upon a defendant the burden of proving that an objection would have been sustained. My research reflects that the law in this regard has not changed. *See, e.g., Norwood v. State,* 670 N.E.2d 32 (Ind. Ct.App.1996). The majority's holding today creates an exception to the heretofore mandatory rule regarding an appellant's burden with regard to ineffective assistance claims premised upon a failure to object. I believe that such an exception carries with it a potential for mischief that counsels against its creation.

Based upon my review of the record and the arguments in support of Smith's claim, I conclude that Smith has failed to carry his burden with respect to both elements of the *Strickland* test and therefore his ineffective assistance claim must fail. I would affirm the conviction.