Chijoike Bomani BEN–YISRAYL, f/k/a Greagree Davis, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0806–CR–512.

Court of Appeals of Indiana.

July 10, 2009.

Elizabeth A. Gabig, Ann M. Sutton, Marion County Public Defender Agency, Indianapolis, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Stephen R. Creason, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Following dismissal of his death penalty, Appellant–Defendant Chijoike Bomani Ben–Yisrayl, f/k/a Greagree Davis, appeals his aggregate sentence of 150 years in the Department of Correction. Upon appeal, Ben–Yisrayl claims that the trial court erred by adopting and imposing the alternative term-of-years sentence provided for in the original sentencing order rather than conducting a new sentencing hearing.

In addition, Ben–Yisrayl challenges the appropriateness of his sentence and the trial judge's recusal from his case. We affirm in part, reverse in part, and remand for resentencing.

## FACTS AND PROCEDURAL HISTORY

In 1984, Ben–Yisrayl was convicted in Marion Superior Court, Criminal Division, Room Five ("Court Five"), of the murder, rape, burglary, and criminal confinement of Debra Weaver. *See Ben–Yisrayl v. State (Ben–Yisrayl I)*, 738 N.E.2d 253, 257 (Ind.2000). The trial court imposed the death penalty for Ben–Yisrayl's murder conviction and also provided for an alternative sentence of sixty years in the event that the death penalty was set aside.[1] The trial court also imposed consecutive terms of fifty years, twenty years, and twenty years, for Ben–Yisrayl's rape, criminal confinement and burglary convictions, respectively. In the event that Ben–Yisrayl did not receive the death penalty, therefore, his aggregate term-of-years sentence was 150 years.

The Indiana Supreme Court affirmed Ben–Yisrayl's convictions and death sentence on direct appeal. *Id.* (citing *Davis v. State*, 598 N.E.2d 1041, 1044 (Ind.1992)). Ben–Yisrayl's direct appeal did not challenge his sentences for rape, criminal confinement, and burglary.

In subsequent post-conviction proceedings, the post-conviction court, the Honorable Cynthia S. Emkes, Special Judge, presiding, granted Ben–Yisrayl partial relief with respect to the death sentence, but it denied him relief with respect to the verdicts and 150–year aggregate sentence. The post-conviction court specifically ordered that the death sentence be set aside but that the "sentence imposed of 150 years total on Counts I, II, III, and V remain as imposed."[2] App. p. 277.

Ben–Yisrayl appealed, and the State cross-appealed, the post-conviction court's judgment. *Ben–Yisrayl I*, 738 N.E.2d at 257. Among his claims, Ben–Yisrayl challenged the post-conviction court's adoption of what it alleged was the trial court's "inadequate and improper sentencing order." App. p. 346. On November 8, 2000, the Supreme Court, viewing the post-conviction court's action as "a remand to the trial court for a new penalty phase trial and sentencing proceeding," affirmed the post-conviction court and remanded to the trial court for this "new penalty phase trial and sentencing proceeding." *Ben–Yisrayl I*, 738 N.E.2d at 267–68. The Supreme Court concluded that its affirmance and remand "render[ed] moot" the parties' challenges to the sentencing order. *Id.* at 268 n. 12.

On November 1, 2001, Ben–Yisrayl moved to dismiss the death penalty on constitutional grounds. On June 27, 2003, the trial court, the Honorable Grant W. Hawkins presiding, concluded that Indiana's death penalty statute was unconstitutional based upon *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and granted Ben–Yisrayl's motion. On May 25, 2004, the Supreme Court reversed the trial court's judgment and remanded for reinstatement of the death penalty request and for the penalty phase proceedings which it had previously

---

1. The jury was unable to agree upon a recommendation regarding the death penalty. *Davis v. State*, 598 N.E.2d 1041, 1044 (Ind. 1992).

2. Count I was burglary; Count II, criminal confinement; Count III, rape; and Count V, murder.

ordered. *State v. Ben–Yisrayl (Ben–Yisrayl II)*, 809 N.E.2d 309, 311 (Ind.2004).

On May 26, 2005, Judge Hawkins recused himself. The case was randomly reassigned to Room G03 of the Marion Superior Court ("Court Three"), the Honorable Sheila A. Carlisle presiding. On June 27, 2005, Ben–Yisrayl moved to set aside Judge Hawkins's recusal or for a hearing on the matter, which Judge Hawkins denied.

On January 16, 2008, following multiple hearings in Court Three, the State moved to dismiss its request for imposition of the death penalty based upon the inadvertent destruction of physical evidence. The trial court granted the State's motion on January 18, 2008. On January 22, 2008, the trial court issued an amended abstract of judgment reflecting the dismissal of the death penalty but otherwise adopting the 150–year sentence originally imposed by the trial court.

On February 12, 2008, Ben–Yisrayl filed a motion to correct error, challenging the trial court's amended abstract of judgment adopting the 150–year sentence. The trial court held a hearing on March 28, 2008, after which Ben–Yisrayl filed a motion to transfer his case back to Criminal Court Five, which the trial court denied. The trial court denied Ben–Yisrayl's motion to correct error on May 22, 2008. This appeal follows.

## DISCUSSION AND DECISION

Ben–Yisrayl first claims that the trial court erred upon remand when it adopted, without a sentencing hearing, the 150–year sentence originally imposed by the trial court in the event that the death penalty was set aside. Ben–Yisrayl argues that such action contravened the Supreme Court's orders upon remand. Ben–Yisrayl further challenges his alternative sentence on the grounds that it is unauthorized by

Indiana law, and he requests a resentencing proceeding which conforms to the dictates of *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The State responds by first arguing that Ben–Yisrayl's challenge to his sentence is barred by waiver and *res judicata*.

### I. Waiver / *Res Judicata*

### A. Sentences for Burglary, Criminal Confinement, and Rape

■ Ben–Yisrayl's only death-penalty-eligible conviction was murder, so the trial court's original imposition and subsequent adoption of an alternative sentence to the death penalty implicates Ben–Yisrayl's sixty-year murder sentence only. *See* Ind. Code § 35–50–2–9 (1983). Ben–Yisrayl's separate sentences for his burglary, criminal confinement, and rape convictions, in contrast, were fully imposed at the time of Ben–Yisrayl's direct appeal. Ben–Yisrayl did not challenge these sentences on direct appeal, nor did he target them in his collateral attack during post-conviction proceedings. Furthermore, although the post-conviction court granted relief, this was only with respect to Ben–Yisrayl's death penalty. To the extent, therefore, that Ben–Yisrayl's 150–year sentence reflects the ninety-year aggregate sentence imposed for the separate convictions of burglary, criminal confinement, and rape, his claim is waived. *See Becker v. State*, 719 N.E.2d 858, 860 (Ind.Ct.App.1999) ("On an appeal from resentencing, the appellate court is confined to reviewing only the errors alleged to have occurred as a result of the resentencing. If an issue was available for litigation in direct appeal but was not in fact raised, then the issue has been waived.").

### B. Sentence for Murder

Ben–Yisrayl's sixty-year sentence for murder, in contrast, was not available for

review at the time of his direct appeal. At that time, Ben–Yisrayl's sentence for his murder conviction, which the Supreme Court affirmed, was the death sentence. *Davis,* 598 N.E.2d at 1044, 1046. Because Ben–Yisrayl's sixty-year sentence was merely a contingent sentence at the time of his direct appeal, his failure to challenge this sentence on direct appeal cannot be construed as waiver. *See Ben–Yisrayl I,* 738 N.E.2d at 258 (observing, as a general matter, that post-conviction issues are forfeited in the event that they were available and not presented on direct appeal).

In his post-conviction petition, Ben–Yisrayl challenged the permissibility of his alternative sentence by claiming that appellate counsel had rendered ineffective assistance on multiple grounds, including by failing to challenge the trial court's imposition of "multiple sentences." App. p. 208. The post-conviction court later found that appellate counsel had rendered ineffective assistance on several grounds and that Ben–Yisrayl had been prejudiced with respect to the imposition of the death penalty, which it set aside. The post-conviction court did not address the issue of alternative sentences and ordered that the 150–year sentence, including the sixty-year sentence for murder, "remain as imposed." App. p. 277.

In his post-conviction appellate brief, Ben–Yisrayl challenged the post-conviction court's adoption of what it alleged was the trial court's "inadequate and improper sentencing order." App. p. 346. The Supreme Court did not address this claim, concluding that challenges to the sentencing order were moot, given its remand order on the penalty proceedings. *Ben–Yisrayl I,* 738 N.E.2d at 268 n. 12.

The death penalty proceedings did not conclude until January 18, 2008, when the trial court dismissed the State's request for imposition of the death penalty. Fol- lowing the trial court's amendment of the abstract of judgment to reflect the dismissal of the death penalty and adoption of the term of years, Ben–Yisrayl filed a timely motion to correct error.

■ Ben–Yisrayl challenged his term-of-years sentence in the post-conviction proceedings as soon as his death penalty was set aside, and the Supreme Court dismissed this challenge as moot given its remand order with respect to proceedings which did not conclude until 2008. We therefore cannot say that Ben–Yisrayl waived his challenge to this sentence. Similarly, because the Supreme Court did not address Ben–Yisrayl's sentencing challenges on their merits, *res judicata* does not bar his relitigation of this issue. *See In re Sheaffer,* 655 N.E.2d 1214, 1217 (Ind. 1995) ("For principles of *res judicata* to apply, there must have been a final judgment on the merits[.]") In any event, a sentence that exceeds statutory authority constitutes fundamental error and is subject to correction at any time. *Lane v. State,* 727 N.E.2d 454, 456 (Ind.Ct.App. 2000).

## II. Compliance with Order on Remand

■ With respect to Ben–Yisrayl's substantive claims, we first address his argument that the trial court, in adopting the term-of-years sentence originally imposed, failed to follow the Supreme Court's directive on remand to conduct "a new penalty phase trial and sentencing proceeding." *Ben–Yisrayl I v. State,* 738 N.E.2d at 268.

In setting aside Ben–Yisrayl's death penalty, the post-conviction court found that he had received ineffective assistance of appellate counsel. Based upon this and other errors, which in the post-conviction court's view were prejudicial only with respect to the death penalty, the post-convic-

tion court set aside the death penalty and ordered that the judgments and sentences, including the sixty-year murder sentence, remain intact.

Upon reviewing the post-conviction court's judgment, the Supreme Court "affirm[ed] the post-conviction court's grant of partial relief in the form of a new penalty phase trial and sentencing proceeding." *Id.* at 267–68. It is Ben–Yisrayl's view that the Supreme Court's ordering a "new penalty phase trial *and sentencing proceeding*" also operated to require the trial court to conduct a new sentencing proceeding before imposing a term of years. *Id.* at 268 (emphasis supplied).

Had the Supreme Court construed the post-conviction court's judgment as ordering a new penalty phase trial only, Ben–Yisrayl's interpretation of the Supreme Court's directive would be more persuasive. But the Supreme Court construed the post-conviction court's judgment, which set aside the death penalty but specifically ordered that the 150–year sentence remain intact, as "ordering a remand to the trial court for a new penalty phase trial and sentencing proceeding." *Id.* at 257; *see id.* at 265. Based upon the Supreme Court's language, therefore, the "new penalty phase trial and sentencing proceeding" related to the death penalty

only.[3] The Supreme Court's remand order therefore did not apply to the imposition of a term of years, and the trial court cannot have been said to have violated the Supreme Court's instructions on remand.[4]

## III. Permissibility of Alternative Sentence

### A. Standard of Review

 Ben–Yisrayl argues that the trial court exceeded its statutory authority in providing for a term-of-years sentence to serve as the alternative sentence to the death penalty. A trial judge is required to sentence convicted criminals within statutorily prescribed limits, and any sentence which is contrary to, or violative of, the penalty mandated by the applicable statute is an illegal sentence. *Bedwell v. State,* 481 N.E.2d 1090, 1092 (Ind.1985), *cited in Mitchell v. State,* 659 N.E.2d 112, 115 (Ind. 1995). A sentence that is contrary to, or violative of, a penalty mandated by statute is illegal in the sense that it is without statutory authorization. *Rhodes v. State,* 698 N.E.2d 304, 307 (Ind.1998) (citing *Bedwell,* 481 N.E.2d at 1092). A sentence that exceeds statutory authority constitutes fundamental error. *Id.* It is subject to correction at any time. *Lane,* 727 N.E.2d at 456.

---

**3.** Our view on this point is supported by the Supreme Court's subsequent references to its *Ben–Yisrayl I* remand order as one for a new "penalty phase trial." *Bostick v. State,* 773 N.E.2d 266, 273 n. 5 (2002) (citing *Ben–Yisrayl I* for proposition that it has "remanded for new penalty phase trials in capital cases where the penalty phase jurors were unable to reach a unanimous recommendation"); *see also Ben–Yisrayl II,* 809 N.E.2d at 310 (emphasizing affirmance of remand in *Ben–Yisrayl I* for new "penalty phase trial.").

**4.** In reaching this conclusion, we are aware that the Supreme Court dismissed as moot the parties' challenges to the sentencing order on the grounds that the cause had been re-

manded for a new penalty proceeding. *Ben–Yisrayl I,* 738 N.E.2d at 268 n. 12. Given the Court's plain language directly adopting the post-conviction court's ordered relief, we are not inclined to infer to the contrary that the dismissal of all sentencing order challenges—including those apparently to the term of years—suggests that the Court intended to remand for a new sentencing hearing on the term of years as well as the death penalty. Indeed, to the extent the death penalty remained a viable sentence and would necessarily replace Ben–Yisrayl's term of years if reimposed upon remand, the merits of Ben–Yisrayl's challenges to his term of years were moot.

■ To the extent that this case rests upon statutory interpretation, our review is de novo. *See Ashley v. State,* 757 N.E.2d 1037, 1039 (Ind.Ct.App.2001). Penal statutes should be construed strictly against the State and ambiguities should be resolved in favor of the accused. *Merritt v. State,* 829 N.E.2d 472, 475 (Ind. 2005). At the same time, however, statutes should not be narrowed so much as to exclude cases they would fairly cover. *Id.* Also, we assume that the language in a statute was used intentionally and that every word should be given effect and meaning. *Id.* We seek to give a statute practical application by construing it in a way favoring public convenience and avoiding absurdity, hardship, and injustice. *Id.* Statutes concerning the same subject matter must be read together to harmonize and give effect to each. *Id.*

### B. Plain Language

■ In challenging the trial court's authority to impose alternative sentences, Ben–Yisrayl points to Indiana's death penalty statute, Indiana Code section 35–50–2–9, and argues that it does not authorize a contingent term-of-years sentence. The State does not dispute Ben–Yisrayl's characterization of section 35–50–2–9, but responds by pointing to Indiana Code section 35–50–2–3 (1983), the sentencing statute for murder, and arguing that it specifically provides for the possibility of such an alternative sentence.

Indiana Code section 35–50–2–3, which provides for a term of years and for the death penalty, states as follows:

(a) A person who commits murder shall be imprisoned for a fixed term of forty (40) years, with not more than twenty (20) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances; in addition, he may be fined not more than ten thousand dollars ($10,000).

(b) Notwithstanding subsection (a) of this section, a person who commits murder may be sentenced to death under section 9 of this chapter.

Section 35–50–2–3 provides options for murder sentences, with the death penalty permissible notwithstanding the requirement that the trial court impose a term of years within the specified range. This plain language, however, does not explicitly authorize the imposition of both sentences for a single conviction, with the term of years to serve as an alternative to the death penalty. Without explicit authority for such an alternative sentencing scheme, and in light of the fact that section 35–50–2–9 makes no reference to it, we are not inclined to infer from the availability of options in section 35–50–2–3 that the trial court may elect both options simultaneously. Indeed, the above statute also authorizes the trial court to sentence a defendant to a term of years falling within a specified range, but we do not infer from this grant of authority and the availability of numerous sentencing options within this range that the trial court may then impose multiple alternative terms of years. It is standard procedure to conduct a resentencing proceeding in the event that a sentence does not survive appellate review. Without explicit language providing otherwise, the trial court is not authorized to circumvent that procedure by imposing alternative sentences.[5]

---

5. To the extent it is analogous, the current alternative misdemeanor sentencing scheme is consistent with this analysis. Like the murder statute at issue in this case, Indiana Code section 35–50–2–7 (2008), which governs Class D felonies, provides that the trial court shall sentence a defendant who commits a Class D felony to a term of years within a specified range. Notwithstanding this requirement, the court may enter judgment of

## C. Other Considerations

■ We reach this conclusion with due consideration for double jeopardy principles and practical considerations. Double jeopardy principles prevent a defendant from being twice punished for the same offense in a single trial. *See Richardson v. State,* 717 N.E.2d 32, 37 n. 3 (Ind.1999). Here, because the death penalty and term of years were designated alternative sentences, in theory they were arguably never simultaneously imposed in violation of double jeopardy. Nevertheless, the imposition of two sentences, with one automatically to take effect upon the vacation of the other, especially when the other remains viable and the focus of the proceedings, creates needless risk for overlap and accompanying double jeopardy violations.

With respect to practical considerations, it is apparent from this case that the alternative sentencing scheme is fraught with peril. By providing for one imposed sentence and another potential sentence, this scheme creates ambiguity and confusion with respect to questions of waiver and preservation of error, it blurs issues available for and addressed upon review, and it obfuscates orders and instructions upon remand. Perhaps most significantly, it fundamentally alters standard appellate procedure by either circumventing the direct appeal process or tolling it indefinitely, as it has done here.[6] We are convinced that the original trial court exceeded its statutory authority in imposing Ben–Yisrayl's alternative sixty-year consecutive sentence for murder. This sentence is

therefore illegal. *See Rhodes,* 698 N.E.2d at 307. Accordingly, we remand to the trial court with instructions to conduct a sentencing hearing and resentence Ben–Yisrayl for his murder conviction. *See Lockhart v. State,* 671 N.E.2d 893, 904 (Ind.Ct.App.1996) (observing general rule that trial court has power to vacate illegal sentence and impose proper one).

## IV. Applicability of *Blakely v. Washington*

■ Ben–Yisrayl claims that his resentencing hearing should comport with the dictates of *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the United States Supreme Court determined that the Sixth Amendment to the U.S. Constitution requires that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Blakely,* this "statutory maximum" was construed to be " 'the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.' " *Trusley v. State,* 829 N.E.2d 923, 925 (Ind.2005) (quoting *Blakely,* 542 U.S. at 303, 124 S.Ct. 2531 (emphasis omitted)). The Indiana Supreme Court subsequently interpreted *Blakely* to dictate that sentences imposed under Indiana's presumptive sentencing scheme violated the Sixth Amendment when aggravating circumstances found by

---

conviction on a Class A misdemeanor and sentence accordingly. *See* Ind.Code § 35–50–2–7. However, if the trial court wishes to provide that a Class D felony conviction will be converted to a Class A misdemeanor conviction upon the fulfillment of certain conditions, such action is authorized by a separate statute expressly permitting this action. *See* Ind.Code § 35–38–1–1.5 (2008). In the in-

stant case, there is no separate statute expressly authorizing the death penalty to convert into a term of years upon the happening of certain conditions.

6. Ben–Yisrayl's sixty-year term of years for murder was imposed in 1984. We are now, twenty-five years later, reviewing his direct challenge to that sentence.

the trial court were not based on facts found to exist by a jury. *See Young v. State,* 834 N.E.2d 1015, 1017 (Ind.2005) (citing *Smylie v. State,* 823 N.E.2d 679, 685 (Ind.2005)).

Here, Ben–Yisrayl committed his crimes in 1983, long before the April 2005 statutory amendments creating an "advisory" sentencing scheme took effect. He is therefore subject to the "presumptive" statutory scheme in effect at the time of his crimes. *See Weaver v. State,* 845 N.E.2d 1066, 1071–72 (Ind.Ct.App.2006) (concluding that change from presumptive to advisory scheme constitutes a substantive, not procedural, change, which should not be applied retroactively), *trans. denied; Patterson v. State,* 846 N.E.2d 723, 727 n. 5 (Ind.Ct.App.2006) (same).[7] Accordingly, under the rule in *Blakely,* the trial court upon remand cannot enhance his sentence based on additional facts, unless those facts are either (1) a prior conviction; (2) facts found by a jury beyond a reasonable doubt; (3) facts admitted by the defendant; or (4) facts found by the sentencing judge after the defendant had waived *Apprendi* rights and consented to judicial factfinding. *Robertson v. State,* 871 N.E.2d 280, 286 (Ind.2007).

The fact that Ben–Yisrayl's original sentencing hearing took place long before *Blakely* does not alter our view that Ben–Yisrayl is entitled to a *Blakely* hearing upon resentencing. *See Kline v. State,* 875 N.E.2d 435, 438 (Ind.Ct.App.2007) (observing, in case where "pre-*Blakely* conviction" was remanded for resentencing in "post-*Blakely* world," that trial court must comply with the "current state of constitutional law" and that any facts used to enhance the defendant's sentence must be found pursuant to *Blakely* ). In addition, to the extent it might appear that Ben–Yisrayl has received a windfall, we observe that even if Ben–Yisrayl's term of years had not been deemed unauthorized and this were a direct appeal on the merits of that term, he would nevertheless be entitled to the retroactive application of *Blakely. See Smylie,* 823 N.E.2d at 690–91 (concluding that *Blakely* constitutes a new rule of constitutional procedure and applies retroactively to all cases on direct review or not yet final at the time it was announced) *and Gutermuth v. State,* 868 N.E.2d 427, 431, 434 (Ind.2007) (concluding that a defendant's case becomes "final" for purposes of retroactivity when the time for filing a timely direct appeal has expired).

Accordingly, we order the trial court upon remand to conduct a full sentencing hearing for Ben–Yisrayl's murder conviction. Pursuant to Indiana Code section 35–50–2–3, such sentence shall be in the range of from thirty to sixty years, with forty years being the presumptive sentence, and with any term in excess of this forty-year sentence to be justified by aggravating circumstances found pursuant to the dictates of *Blakely.* In addition, the trial court shall determine whether such sentence shall be served concurrent or consecutive to Ben–Yisrayl's existing ninety-year term and provide proper justification in the event that a consecutive sentence is imposed. Of course, any aggravator used to justify the imposition of a consecutive sentence need not be found in accordance with *Blakely. See Smylie,* 823 N.E.2d at 686 (observing that *Blakely* does not implicate the imposition of consecutive sentences). Having reached this conclusion, we find it unnecessary to address Ben–Yisrayl's challenge to the propriety of his 150–year sentence.

---

7. *Samaniego–Hernandez v. State,* 839 N.E.2d 798 (Ind.Ct.App.2005), referenced by both *Weaver* and *Patterson,* holds to the contrary that the "advisory" sentencing scheme reflects a procedural, rather than substantive, change.

## V. Recusal

 Ben–Yisrayl's final challenge is to Judge Hawkins's recusal from his case. On May 26, 2005, during the pendency of Ben–Yisrayl's penalty proceedings in Judge Hawkins's Court Five, Judge Hawkins recused himself from Ben–Yisrayl's case. Judge Hawkins explained his recusal by issuing an order stating as follows:

The Court, in an unrelated case captioned State of Indiana versus Jeffrey Voss, cause number 49G05–0412–MR–232452, having granted the State's request for recusal finds that the reasons for requesting that recusal would equally apply to this cause. In other words, if it would appear improper for the Judge presiding in Criminal Court Five to preside over the Voss matter, it would also appear improper for that Judge to preside over this cause. Accordingly, the Clerk is to randomly reassign this cause to any appropriate Court in Marion County.

App. p. 116(a).

The "Voss" case referenced by the court was similarly a death penalty case assigned to Judge Hawkins's Court Five. *Voss v. State*, 856 N.E.2d 1211, 1214–15 (Ind.2006). Following its request for the death penalty in *Voss*, the State filed an Indiana Criminal Rule 12(B) motion requesting Judge Hawkins to remove himself as judge based upon what the State alleged was Judge Hawkins's bias against the death penalty. *Id.* at 1215, 1217. In support of its motion, the State attached an affidavit asserting certain facts, including certain decisions in which Judge Hawkins had held the death penalty unconstitutional, media remarks by Judge Hawkins which were allegedly critical of the death penalty, and instances of conduct by Judge Hawkins in his prior representation of defendants facing the death penalty. *Id.* at 1217. Judge Hawkins subsequently issued an order appointing Judge Jeffrey V. Boles to decide the removal motion. *Id.* at 1215. On May 26, 2005, Judge Boles directed that the case be reassigned on a random basis to another Marion Superior Court, Criminal Division. *Id.*

On this same date, Judge Hawkins *sua sponte* recused himself from the instant case based upon Judge Boles's ruling in the Voss case. On June 2, 2005, Ben–Yisrayl's case was randomly reassigned to Court Three. On June 27, 2005, Ben–Yisrayl objected to Judge Hawkins's recusal, requesting that the ruling be set aside and the matter set for an evidentiary hearing. On June 28, 2005, Judge Hawkins denied the motion and ordered that the case be returned to Court Three.

On June 29, 2005, Ben–Yisrayl's defense counsel appeared in Court Three, acknowledged Judge Hawkins's denial of the motion to set aside his recusal, and made no further objection to the proceedings in Court Three. The parties agreed to set Ben–Yisrayl's resentencing matter for a pre-trial conference. Status hearings on October 28, 2005; December 9, 2005; January 13, 2006; February 17, 2006; March 31, 2006; May 26, 2006; June 23, 2006; and August 18, 2006 ensued, and a trial date was set.

On November 22, 2006, the Supreme Court handed down its decision in *Voss*, in which it vacated both Judge Hawkins's order transferring the case to Judge Boles for ruling on the State's recusal motion, as well as Judge Boles's May 26, 2005 order implicitly granting the State's motion for a change of judge and ordering reassignment to a different judge. *Id.* at 1221. In doing so, the Supreme Court concluded that the facts alleged in the State's affidavit did not support a rational inference of bias or prejudice and were therefore inadequate to support a Rule 12(B) change of judge. *Id.* at 1219.

At a December 1, 2006 pre-trial conference, the parties discussed *Voss* and the possibility of its affecting Ben–Yisrayl's case, but defense counsel made no objection on *Voss* grounds. On February 15, 2007, Ben–Yisrayl filed a motion to continue on the basis of his anticipated motion to transfer the cause back to Court Five due to *Voss.* The trial court granted the motion but ordered that any pleading be filed prior to March 16, 2007, the date of the next-scheduled pre-trial conference. Ben–Yisrayl subsequently moved to continue the March 16, 2007 conference and filed no *Voss* pleadings by the designated date.

Additional status hearings were held on May 23, 2007; June 15, 2007; July 13, 2007; October 31, 2007; and November 14, 2007. Defense counsel did not object on *Voss* grounds in any of these hearings.

On January 16, 2008, the State moved to dismiss its request for imposition of the death penalty. The trial court subsequently granted the motion, issued an amended abstract of judgment, and held a March 28, 2008 hearing on Ben–Yisrayl's non-*Voss*-related motion to correct error. It was not until almost two weeks later that Ben–Yisrayl, on April 10, 2008, again sought to transfer his case back to Judge Hawkins's court on the basis of "new rulings," presumably in *Voss.* The trial court denied his motion on the grounds that Ben–Yisrayl's claim was waived.

On appeal, Ben–Yisrayl points to the Supreme Court's reversal of Judge Hawkins's removal in *Voss* and argues that Judge Hawkins's recusal in his case is similarly suspect. We find it unnecessary to reach the merits of this claim. As the State argues, "[t]imeliness is important on recusal issues." *Tyson v. State,* 622 N.E.2d 457, 460 (Ind.1993). " 'Counsel ... may not lie in wait, raising the recusal issue only after learning the court's ruling on the merits.' " *Id.* (quoting *Phillips v.*

*Amoco Oil Co.,* 799 F.2d 1464, 1472 (11th Cir.1986)). Here, Ben–Yisrayl submitted to the jurisdiction of Court Three for almost three years before seeking to transfer the case back to Judge Hawkins's Court Five. Indeed, by the time Ben–Yisrayl sought to challenge the presence of his case in Court Three, the Supreme Court's decision in *Voss* was almost a year and a half old, the court had held multiple hearings with no objection by the parties, the court had granted the State's motion to dismiss the death penalty, and the hearing on Ben–Yisrayl's motion to correct error had been held. We therefore conclude that Ben–Yisrayl has waived his challenge to the trial court's denial of his motion to transfer based upon an allegedly improper change of judge. *See Angleton v. State,* 714 N.E.2d 156, 158 (Ind.1999) (failure to lodge timely objection to change of judge waives any claim of error on appeal).

 In any event, as the trial court observed, it could not properly transfer the case back to Judge Hawkins's court because Judge Hawkins had never set aside his recusal. Once a judge disqualifies himself from a case he cannot thereafter reinstate himself without revoking or setting aside his prior order of disqualification. *Wilson v. State,* 521 N.E.2d 363, 365 (Ind.Ct.App.1988), *trans. denied.* In seeking transfer, Ben–Yisrayl made no showing that Judge Hawkins had since rescinded his recusal. We find no error.

### CONCLUSION

We have concluded that Ben–Yisrayl is entitled to a new sentencing hearing for his murder conviction which comports with the dictates of *Blakely,* but that he has waived his challenge to Judge Hawkins's recusal from his case. Accordingly, we affirm in part, reverse in part, and remand to Court Three for a new sentencing hearing on the murder conviction only.

The judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded for further proceedings.

FRIEDLANDER, J., and MAY, J., concur.