**Paul Eddie RHODES, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 49S00–9709–CR–476.**

Supreme Court of Indiana.

Aug. 26, 1998.

Jan B. Berg, Indianapolis, for Appellant.

Jeffrey A. Modisett, Attorney General, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, for Appellee.

SULLIVAN, Justice.

Defendant Paul Eddie Rhodes appeals his conviction for murder and sentence of life imprisonment without parole. We affirm the conviction. Because we find that the trial court sentenced defendant under a statute not in effect at the time of the crime, we vacate defendant's sentence of life imprisonment without parole and resentence defendant to a term of sixty years.

*Background*

On May 8, 1994, defendant repeatedly stabbed fourteen year-old Antwan Majors in a disagreement over some forty or fifty dol-

lars Majors owed defendant. Majors died as a result of the stab wounds. On May 10, 1994, the State charged defendant with Murder.[1] On February 15, 1995, the State sought a sentence of life imprisonment without parole,[2] alleging as an aggravating circumstance that defendant was on probation when he murdered the victim.[3] On January 28, 1997, a jury convicted defendant of Murder, and the trial court imposed a sentence of life imprisonment without parole on February 26, 1997. Defendant now appeals his conviction and sentence.

## Discussion

Defendant presents four issues for this Court's consideration: (1) whether the sentence of life imprisonment without parole was without statutory authorization; (2) whether the trial court erred in denying defendant's motion to suppress his confession; (3) whether the trial court erred in permitting the jury to view certain exhibits with only the bailiff present; and (4) whether the trial court erred in finding defendant not to be mentally retarded within the meaning of Ind.Code § 35–36–9–2 (Supp.1994).

## I

■ Defendant first argues that his sentence of life imprisonment without parole is without statutory authorization and should be vacated. We agree. On May 10, 1994, the State filed murder charges against defendant. On February 15, 1995, the State requested a sentence of life imprisonment without parole. On February 26, 1997, the trial court sentenced defendant to life imprisonment without parole. In so doing, both the

State and the trial court relied on the following statute:

> The state may seek *either* a death sentence or a sentence of life imprisonment without parole for murder by alleging, on a page separate from the rest of the charging instrument, the existence of at least one (1) of the aggravating circumstances listed in subsection (b).

Ind.Code § 35–50–2–9(a) (Supp.1994) (emphasis added).[4]

■ The effective date of the statute on which the State and the trial court relied was July 1, 1994. *See* 1994 Ind. Acts P.L. 158 § 7. Defendant murdered the victim on May 8, 1994, almost two months before the statute became effective. "One of our well established rules of criminal law is that the controlling law is that which is in effect at the time the crime is committed." *Smith v. State*, 675 N.E.2d 693, 695 (Ind.1996) (citing *Jackson v. State*, 257 Ind. 477, 484, 275 N.E.2d 538, 542 (1971)). *See also Isaacs v. State*, 673 N.E.2d 757, 765 (Ind.1996).

Indiana Code § 35–50–2–9, as in effect on May 8, 1994, did not permit the State to request a sentence of life imprisonment without parole; a sentence of life imprisonment without parole was available *only* as an alternative when the State sought a sentence of death. *See* Ind.Code § 35–50–2–9 (1993).[5] This contrasts with the 1994 version of the statute on which the State and the trial court relied: Ind.Code § 35–50–2–9 (Supp.1994) permits the State to request either a sentence of death *or* life imprisonment without parole. Because the trial court relied on the later version of the statute, it imposed on

---

1. Ind.Code § 35–42–1–1 (1993).

2. The State sought this sentence pursuant to Ind. Code § 35–50–2–9 (Supp.1994). As will be discussed *infra*, the version of this statute codified in the 1994 Supplement to the Indiana Code was not applicable to crimes committed before July 1, 1994.

3. Ind.Code § 35–50–2–9(b)(9)(c) (Supp.1994). *See* note 2, *supra*.

4. Defendant does not challenge and this Court does not address the procedure which the State followed in requesting a sentence of life imprisonment without parole for defendant.

5. The statute which was in effect at the time defendant committed murder provided as follows:

> The state may seek a death sentence for murder.... If the hearing is by jury, the jury shall recommend to the court whether the death penalty or life imprisonment without parole, or neither should be imposed.... If the hearing is to the court alone, the court shall [ ] sentence the defendant to death[ ] or [ ] impose a term of life imprisonment without parole[.]

Ind.Code § 35–50–2–9(a), (e), & (g) (1993).

defendant a sentence which statutorily was available to it only as an alternative when the State sought a sentence of death, which here the State had not.[6]

■ A sentence that is contrary to or violative of a penalty mandated by statute is illegal in the sense that it is without statutory authorization. *Bedwell v. State,* 481 N.E.2d 1090, 1092 (Ind.1985). A sentence that exceeds statutory authority constitutes fundamental error. *Jones v. State,* 544 N.E.2d 492, 496 (Ind.1989). Here, the State sought a sentence of life imprisonment without parole under a statute at a time when the only sentences the State was authorized to request for the crime of Murder were a sentence of death or a term of years.[7] The trial court exceeded its statutory authority in granting the State's request and sentencing defendant to life imprisonment without parole. We conclude that defendant's sentence of life imprisonment without parole was without statutory authorization and that the trial court committed fundamental error when it sentenced defendant under Ind.Code § 35–50–2–9 (Supp.1994). Accordingly, we vacate defendant's sentence of life imprisonment without parole.

■ Defendant asks this Court to remand this cause for resentencing under the provisions of Ind.Code § 35–50–2–9 (1993). We choose, however, to exercise our authority "in all appeals of criminal cases, . . . to review and revise the sentence imposed." Ind. Const. art. VII, § 4. *See Roark v. State,* 644 N.E.2d 565, 571 (Ind.1994); *Cooper v. State,* 540 N.E.2d 1216, 1218 (Ind.1989). Having determined that the provisions of Ind.Code § 35–50–2–9 (1993) are not applicable to defendant because the State did not file a request for the death sentence, we turn to the statute governing sentencing for the crime of murder in effect at the time defendant murdered the victim, which provides as follows:

A person who commits murder shall be imprisoned for a fixed term of forty (40) years, with not more than twenty (20) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances[.]

Ind.Code § 35–50–2–3 (1993).

In imposing the sentence of life imprisonment without parole, the trial court stated:

The defendant has been found guilty by a jury of Murder.

The jury has found that an aggravating circumstance exists beyond a reasonable doubt, that the aggravating circumstance outweighs mitigating circumstances, and has recommended that the sentence of life imprisonment without parole be imposed.

The Court has considered the same evidence that was presented to the jury at trial and has considered all possible mitigating circumstances listed in I.C. 35–50–2–9(c) and all of the possible mitigating circumstances contained in the defendant's Sentencing Memorandum dated February 24, 1997.[8]

The Court now finds the following aggravating circumstance exists beyond a reasonable doubt:

1. The defendant committed the murder of Antwan Majors on May 8, 1994, while on probation after receiving a sentence for the commission of a felony.

The Court finds that the aggravating circumstance outweighs any possible mitigating circumstances. The Court is personally convinced beyond a reasonable doubt that the defendant is guilty of the murder for which he has been convicted and that he deserves the sentence of life

---

6. In response to the argument that, had defendant objected at trial to the sentence of life imprisonment without parole, the State could have amended its request to include the death penalty, we say only that the State deliberately chose not to seek a sentence of death for this defendant, although such a sentence indisputably was available.

7. Ind.Code §§ 35–50–2–3 (term of years) & –9 (sentence of death) (1993).

8. These mitigating circumstances included: (1) alcoholic and abusive parents; (2) parents separated when defendant was five years old; (3) deplorable childhood living conditions; (4) placement in abusive foster homes; (5) mental retardation; and (6) drug abuse. (Footnote not in original.)

imprisonment without parole as to the aggravating circumstance found herein.

The Court hereby sentences the defendant to life imprisonment without parole.

(R. at 225–26.)

We agree with the trial court that defendant murdered Antwan Majors while defendant was on probation.[9] We assign this aggravator weight in the middle to high range. Ind.Code § 35–38–1–7.1(b)(1) (1993). The victim was aged 14. We assign this aggravator weight in the middle to low range. Ind. Code § 35–38–1–7.1(d) (1993). Defendant has a history of criminal activity.[10] We assign this aggravator weight in the middle to high range. Ind.Code § 35–38–1–7.1(b)(2) (1993). Defendant presented substantial evidence demonstrating his lack of intellectual capabilities and his unhappy and often abusive childhood. We assign these mitigating factors weight in the middle range.

In balancing the aggravating and mitigating circumstances, we determine that the aggravators outweigh the mitigators by such a margin as to warrant a fully enhanced sentence. Defendant is a repeat offender who has proved to be highly dangerous and violent even while on probation. We now impose on defendant the maximum sentence available under Ind.Code § 35–50–2–3 (1993), a term of sixty years.

## II

■ Defendant claims that the trial court erred in denying defendant's motion to suppress his confession. Defendant gave two statements to the police. In the first statement, defendant did not admit his involvement in the murder. While giving his second statement, defendant signed a form waiving his rights and then confessed his role in the murder. Defendant argues that his limited intellectual functioning rendered his confession involuntary and therefore inadmissible. In moving to suppress his confession, defendant proffered evidence in an effort to demonstrate that he lacked the "physical, physiological, mental, emotional and educational capacity to appreciate and understand the full meaning of his *Miranda* rights and that his waiver of those rights was therefore not voluntary, knowing or intelligent." [11] Br. of Appellant at 12 (footnote omitted).

■ When reviewing the voluntariness and admissibility of a confession, this Court looks at the totality of the circumstances surrounding the case, "including the defendant's background, experience, and conduct." *Allen v. State*, 686 N.E.2d 760, 772 (Ind.1997) (citing *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)). *See Light v. State*, 547 N.E.2d 1073, 1076 (Ind. 1989). Defendant argues that, because he is mentally retarded, he was unable to comprehend the nature of the rights he was waiving and therefore could not waive those rights knowingly or voluntarily. Without deciding at this juncture whether defendant is mentally retarded, we address whether the trial court erred in denying defendant's motion to suppress his confession.

■ A defendant's mental condition alone does not render a confession involuntary. *Smith v. State*, 689 N.E.2d 1238, 1247–48 & n. 12 (Ind.1997) (citing cases). Defendant also must allege some misconduct on the part of the police. *Id.*, 689 N.E.2d at 1248. "Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a defendant of due process of law." *Colorado v. Connelly*, 479 U.S. 157, 164, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) (footnote citing cases omitted).

Defendant does not allege any police misconduct and relies solely on his mental status in arguing that the trial court erred in denying his motion to suppress his confession. The record demonstrates that although the

---

**9.** Defendant was on probation following his 1991 conviction for Battery for the shooting of his wife's boyfriend.

**10.** Defendant has an adult criminal record dating back to 1978, including three misdemeanor convictions and one felony conviction.

**11.** Defendant also incorporated by reference the evidence presented at a pretrial hearing on his asserted mental retardation.

police requested the second interview with defendant, they did not force defendant to give a statement. Detective Stamm read defendant his rights before defendant gave the incriminating statement. When specifically questioned by the police, defendant indicated that he understood his rights and his waiver of them, and that his statement was not influenced by the ingestion of drugs.

Defendant does not point us to any specific instances in which his limited intellectual functioning impacted his ability to waive his rights or to give a knowing and voluntary confession. The record provides an adequate foundation for the trial court's decision to admit defendant's confession. Consequently, we cannot conclude that the trial court erred in denying defendant's motion to suppress his confession.

### III

■ Defendant contends that the trial court violated his constitutional rights when it permitted the jury to view certain exhibits with only the bailiff present. After receiving a request from the jury to view certain exhibits, the trial court offered both parties the opportunity to have the viewing in open court with all parties present. The State indicated its preference for viewing the exhibits with only the bailiff present, to which defense counsel stated, "I have no objection." (R. at 1032.) Defendant waived his right to be present.

■ Defendant also argues that a note written by a juror to the court demonstrates that the jury was discussing the evidence while viewing the exhibits, and that defendant suffered prejudice by the viewing procedure. The chronology of the record demonstrates that the trial court received the note prior to the jury's viewing of the exhibits. Based on this sequence of events, we cannot conclude that this procedure prejudiced defendant.

### IV

■ Finally, defendant claims that the court erred (1) in finding defendant not to be mentally retarded; and (2) in sentencing defendant to life imprisonment without parole because defendant is mentally retarded.[12] Defendant challenged the trial court's finding that defendant is not mentally retarded both before trial and during sentencing.

Defendant correctly argues that Ind.Code §§ 35–36–9–1 to –7 (Supp.1994) ("Mental Retardation Statute") and 35–50–2–9 (Supp.1994) operate in conjunction to prohibit the execution of mentally retarded defendants:

> [T]he state may not proceed against a defendant under this section [imposing a sentence of death or life imprisonment without parole] if a court determines at a pretrial hearing under IC 35–36–9 that the defendant is a mentally retarded individual.

Ind.Code § 35–50–2–9(a) (Supp.1994).

We decline to address the correctness of the trial court's ruling that defendant was not mentally retarded for the reason that the provisions of the Mental Retardation Statute were not available to defendant at the time he committed the crime here at issue. Like the statute under which defendant was sentenced, the Mental Retardation Statute became effective on July 1, 1994. *See* 1994 Ind. Acts P.L. 158 § 3. As stated in part I, *supra*, "the controlling law is that which is in effect at the time the crime is committed." *Smith*, 675 N.E.2d at 695 (citing *Jackson*, 257 Ind. at 484, 275 N.E.2d at 542). We have held that the Mental Retardation Statute does not apply retroactively. *Allen*, 686 N.E.2d at 785–86.

### Conclusion

We find that defendant's sentence of life imprisonment without parole is without statutory authorization. Accordingly, we vacate this sentence and resentence defendant to a term of sixty years pursuant to Ind.Code § 35–50–2–3 (1993). We also find that the trial court did not err in (1) denying defendant's motion to suppress his confession; and (2) permitting the jury to view certain exhibits with only the bailiff present. Finally, we hold that the provisions of the Mental Retar-

---

**12.** Defendant's sentencing argument is now moot, given our finding that the trial court sentenced defendant to life imprisonment without parole without statutory authorization.

dation Statute were not available to defendant.

SHEPARD, C.J., and DICKSON, SELBY and BOEHM, JJ., concur.