Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jul 10 2013, 5:33 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ELLEN M. O'CONNOR**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| ADAM VOEGEL, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 49A05-1210-CR-502 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
Cause No. 49G01-1110-FA-73946

**July 10, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Adam Voegel ("Voegel") was convicted after a jury trial of two counts of Child Molesting, as Class A felonies[1]; two counts of Child Molesting, as Class C felonies[2]; two counts of Child Solicitation, as Class D felonies[3]; one count of Dissemination of Matter Harmful to Minors, as a Class D felony[4]; and two counts of Obscene Performance, as Class A misdemeanors.[5] He was sentenced to an aggregate term of imprisonment of thirty-eight years, and now appeals.

We affirm.

**Issues**

Voegel presents two issues for our review, which we restate as:

   I.    Whether the trial court abused its discretion when it admitted into evidence the contents of his interview with police because his statements were coerced, despite his voluntary waiver of <u>Miranda</u> rights; and

  II.    Whether the trial court abused its discretion when it excluded from evidence information concerning the prior sexual conduct of one of two victims.

**Facts and Procedural History**

During the summer of 2011, Voegel lived with his domestic partner, Jarrod Bertram ("Bertram"), in Indianapolis. Throughout the course of the summer, Bertram's nephews,

---

[1] Ind. Code § 35-42-4-3(a).

[2] I.C. § 35-42-4-3(b).

[3] I.C. § 35-42-4-6.

[4] I.C. § 35-49-3-3.

[5] I.C. § 35-49-3-2.

2

Ch.B., Cl.B., and Co.B., stayed in the house overnight on numerous occasions. Co.B. in particular was very fond of Bertram.

At some point during the summer, Co.B. fell asleep on the living room couch. When he woke up, Voegel had placed his hand on Co.B.'s penis and had placed Co.B.'s hand on his penis. Co.B. pretended to remain asleep during this incident.

Later that summer, Voegel showed Co.B. several pornographic videos. Voegel also fondled Co.B. or had Co.B. masturbate on several occasions, twice had Co.B. engage in anal sex with him, and once had Co.B. perform oral sex upon him. On one occasion when Voegel was watching Co.B. masturbate, Ch.B. entered the room, and Voegel eventually persuaded Ch.B. to masturbate until Ch.B. ejaculated.

On October 11, 2011, Co.B. informed a school guidance counselor that he had been molested by Voegel. This resulted in forensic interviews of Co.B. and Ch.B., and led to a police investigation.

On October 14, 2011, Indianapolis Marion County Police Sergeant Jan Faber ("Sergeant Faber"), a detective in the child abuse unit, conducted an interview with Voegel. Voegel signed a waiver of his Miranda rights at the beginning of the interview. Voegel informed Sergeant Faber repeatedly that he suffered from bipolar disorder but had not taken prescribed medication for several months due to unaffordability after a job loss. Sergeant Faber did not detect any impairment in Voegel's capacity to waive his rights or provide cogent information, and continued the interview. Eventually, Voegel admitted to committing several criminal acts as to Co.B. and Ch.B. At the end of the interview, Sergeant Faber

arrested Voegel.

On October 19, 2011, Voegel was charged with four counts of Child Molesting, as Class A felonies; five counts of Child Molesting, as Class C felonies; two counts of Obscene Performance, as Class D felonies; two counts of Child Solicitation, as Class D felonies; and two counts of Dissemination of Matter Harmful to Minors, as Class D felonies.

On May 31, 2012, Voegel filed a motion to suppress evidence, which sought a ruling that would exclude from evidence the contents of his statements to Sergeant Faber during his interview on October 14, 2011. In his motion and during the June 29, 2012 hearing on the motion, Voegel contended that though he properly waived his Miranda rights, his statements admitting to criminal conduct as to Co.B. and Ch.B. were not voluntarily given because he was suffering from unmedicated bipolar disorder, depression, and anxiety. Voegel argued that Sergeant Faber took advantage of these conditions and his isolation from Bertram to obtain a coerced confession. On July 16, 2012, the trial court denied the motion to suppress.

During an August 16, 2012 hearing on motions in limine, Voegel informed the trial court that he intended to elicit testimony from Co.B. concerning a prior incident of molestation that had been perpetrated by another individual in Hendricks County. The trial court ultimately denied Voegel's in limine request for a ruling permitting him to elicit such testimony, and instead ruled that Voegel could introduce as an offer of proof court records as evidence of the prior molestation.

A jury trial was conducted from August 20, 2012 to August 22, 2012. At its conclusion, the jury found Voegel guilty of two counts of Child Molesting, as Class A

4

felonies; two counts of Child Molesting, as Class C felonies; two counts of Child Solicitation, as Class D felonies; one count of Dissemination of Matter Harmful to a Minor, as a Class D felony; and two counts of Obscene Performance, as Class A misdemeanors. A sentencing hearing was conducted on September 12, 2012, at the conclusion of which Voegel was sentenced to an aggregate term of imprisonment of thirty-eight years.

This appeal ensued.

## Discussion and Decision

### Voluntariness of Voegel's Confession

Voegel first contends that the trial court abused its discretion when it admitted into evidence the incriminating statements he made during his interview with Sergeant Faber. We review the trial court's rulings on the admissibility of evidence for an abuse of discretion, which occurs when the court's decision is contrary to the logic and effect of the facts and circumstances before it. Kelley v. State, 825 N.E.2d 420, 424 (Ind. Ct. App. 2005). "When reviewing a challenge to the trial court's decision, we examine the record for substantial, probative evidence of voluntariness; we do not reweigh the evidence." Horan v. State, 682 N.E.2d 502, 510 (Ind. 1997).

Where, as here, a defendant challenges the admissibility of his confession, the State must prove beyond a reasonable doubt that the giving of the confession was voluntary. Jackson v. State, 735 N.E.2d 1146, 1153 (Ind. 2000). Upon appellate review of a trial court's decision to admit a confession into evidence, we look to the totality of the circumstances surrounding the defendant's confession. Id. Our inquiry focuses on whether the confession

5

was given freely and voluntarily and was not induced by violence, threats, promises, or other improper influences, and we will uphold the admission of a confession into evidence if there is substantial evidence of probative value to support the trial court's decision. Id. at 1153-54. "Promises of leniency render a statement involuntary, but vague statements that the defendant benefits by cooperating and telling the real story do not constitute sufficient promises." Fields v. State, 679 N.E.2d 1315, 1320 (Ind. 1997).

While the intelligence, education, and mental capacity of the defendant are among the factors to be considered in determining whether a confession is admissible, lower intelligence or education or mental illness alone are not enough to render a confession involuntary and therefore inadmissible. Jackson, 735 N.E.2d at 1154. Rather, there must be some police misconduct associated with obtaining the confession before there is any "'basis for concluding that any state actor has deprived a defendant of due process of law.'" Id. (quoting Rhodes v. State, 698 N.E.2d 304, 308 (Ind. 1998)). Thus, absent police conduct with a causal connection to the confession, there is no basis for concluding that a confession was not voluntarily given. Id.

Here, Voegel points to his relative lack of education and mental illness as informing the circumstances of his confession during his interview with Sergeant Faber. Voegel also points to exchanges between him and Sergeant Faber during the interview, where Sergeant Faber made what Voegel admits were "vague" promises of help. Fields, 679 N.E.2d at 1320; Appellant's Br. at 16. Voegel nevertheless insists that "[h]is will was overborne" because he "needed his partner … but could not leave the arena until the game was over," and thus his

6

confession was involuntary under the totality of the circumstances.  (Appellant's Br. at 16.)

We cannot agree.  To the extent that Voegel's argument seeks that we reweigh the evidence before the trial court, we decline his invitation to do so.  See Horan, 682 N.E.2d at 510.

Under the relevant case law, our inquiry centers on whether police misconduct is the cause of a defendant's waiver of Miranda rights or confession, or whether the defendant was otherwise incapable of providing a voluntary confession.  The interview itself ran approximately four hours, during which Sergeant Faber offered Voegel several breaks to use a restroom, smoke, or get a drink of water.  Voegel does not contend that Sergeant Faber made inappropriate promises of leniency or otherwise engaged in inappropriate interview techniques.  Rather, Sergeant Faber made less specific statements, such as telling Voegel that individuals who admitted to their offenses were able to receive psychiatric treatment.  She also told Voegel that she tended to believe Co.B. and believed that something happened between him and Voegel, and told Voegel that she understood that his life as a gay man was difficult and not one that he chose.  To the extent Voegel points to all this to contend that he was overmatched by Sergeant Faber's preparation and skill in conducting the interview, none of this amounts to any form of police misconduct.  Thus, we cannot conclude that the trial court erred in its conclusion that Sergeant Faber appropriately conducted the interrogation or that Voegel's will was overcome in the manner required by law to render the confession involuntary.

Voegel also does not establish any basis upon which we may conclude the trial court

7

erred in concluding that he was not so mentally ill as to lack the capacity to provide a voluntary confession. Sergeant Faber, who had conducted nearly five-hundred interviews in child abuse investigations, testified that Voegel never appeared unable to understand her questions, consistently provided responses that appropriately tracked her queries, and never became overly distraught. Despite Voegel's repeated statements during the interview that he felt like he might have a nervous breakdown, Sergeant Faber testified that Voegel remained calm and collected throughout most of the interview. Sergeant Faber described as typical the progress of her interview with Voegel. Moreover, this Court's review of the video recording of the interview does not reveal Voegel to be in an apparently agitated state.

Under these circumstances, we cannot conclude the trial court abused its discretion when it concluded that the State had proved beyond a reasonable doubt that Voegel's confession was voluntary, and thus we find no error in the court's admission of Voegel's confession into evidence at trial.

Exclusion of Prior Sexual Conduct Evidence

Voegel also contends that the trial court erred when, after initially ruling such evidence was admissible, it ultimately excluded from evidence certain information concerning Co.B.'s sexual history. Voegel argues that Co.B. gained knowledge of sexual matters as a result of prior molestation by another individual, and that this raises doubts concerning Co.B.'s accusations against Voegel.

Evidence Rule 412 governs the admissibility of evidence related to the prior sexual experiences of an alleged victim of a sex crime. Rule 412 and a pair of common-law

8

exceptions to the rule broadly proscribe the admission of such evidence, except in a few narrow circumstances; the parties agree on appeal that none of those circumstances applies in the present case. Rather, Voegel contends that the effect of Rule 412 in his case impermissibly infringed upon his right to cross-examine witnesses under the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Indiana Constitution.

The Sixth Amendment to the United States Constitution provides, in relevant part, "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him." This right is made obligatory upon the States by the Fourteenth Amendment. Howard v. State, 853 N.E.2d 461, 464 (Ind. 2006). "The essential purpose of the Sixth Amendment right of confrontation is to ensure that the defendant has the opportunity to cross-examine the witnesses against him." Id. at 465. This right "is fundamental and essential to a fair trial," and includes the right to ask questions in an effort to undermine the State's case, as well as to impeach the credibility of witnesses. Id.

Yet the right to cross-examine witnesses "'guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" Oatts v. State, 899 N.E.2d 714, 722 (Ind. Ct. App. 2009) (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985)). Nor is the right otherwise absolute; it "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." Id. (internal quotations and citations omitted). Recognizing that the right to cross-examine witnesses may be infringed upon by Evidence Rule 412, our supreme court

has held that the constitutionality of the Rule "'is subject to examination on a case by case basis.'" Id. (quoting Williams v. State, 681 N.E.2d 195, 201 (Ind. 1997)).

Here, Voegel contends that the trial court erred when it ruled against evidence he proffered of a prior molestation, of which Co.B. was the victim. Voegel pursued a ruling in limine on the admissibility of the evidence, which the trial court denied. The trial court ruled that while it would permit an offer of proof on the matter, it would not permit Voegel to call Co.B. to testify about the prior incident of molestation. Instead, the trial court ruled it would permit Voegel to introduce court records related to the prior incident in order to preserve a record for appeal.

Voegel contends that while this evidence does not fall within the exceptions to the rape shield rule as set forth in Evidence Rule 412, the operation of the Rule and the trial court's ruling on the proffered evidence deprived him of his right to confrontation under the United States and Indiana Constitutions.

We disagree on two grounds. First, Voegel did not make an offer of proof during the trial of even the reduced scope permitted by the court's ruling in limine. He has therefore waived the matter on appeal. See Young v. State, 746 N.E.2d 920, 924 (Ind. 2001) ("[f]ailure to make an offer of proof of the omitted evidence renders any claimed error unavailable on appeal unless it rises to the level of fundamental error").

Second, assuming without deciding that the trial court's decision was in error, Voegel has failed to establish how that decision would have amounted to fundamental error. "To constitute fundamental error, the 'defendant must show that the error was a substantial and

blatant violation of basic principles which rendered the result of the trial unfair.'" Id. (quoting Roach v. State, 695 N.E.2d 934, 942 (Ind. 1998)). Had Voegel made the limited offer of proof permitted by the trial court, exclusion from evidence of the simple fact of a prior incident of molestation by another person would not have so prejudiced Voegel's fundamental rights as to render the result of his trial unfair. And even under the broader set of facts Voegel presented to the trial court in limine—that Co.B. had been previously molested, and that the prior molestation had occurred in a bed—did not correspond in sufficient detail to the numerous events to which Co.B. testified at Voegel's trial, including the use of pornographic videos and various items of sexual paraphernalia, as to make the exclusion of the details of the prior incident so prejudicial as to raise the specter of fundamental error here. See Oatts, 899 N.E.2d at 722 (recognizing that the strictures of Evidence Rule 412 may, in some circumstances, yield to the right of confrontation).

We thus conclude that Voegel has waived for purposes of appellate review his confrontation claims, and has also failed to demonstrate that any error associated with this claim was so fundamental as to have rendered the result of his trial unfair.

**Conclusion**

The trial court did not abuse its discretion when it concluded that Voegel's confession was given voluntarily. Voegel has waived his confrontation claim concerning the admissibility of certain evidence otherwise excluded under Evidence Rule 412, and has further failed to establish fundamental error arising from the trial court's exclusion of that evidence.

11

Affirmed.

NAJAM, J., and BARNES, J., concur.