## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jun 10 2015, 9:51 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gary Wright,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff,* | June 10, 2015<br><br>Court of Appeals Case No.<br>49A02-1410-CR-693<br><br>Appeal from the Marion Superior Court<br>The Honorable Lisa Borges, Judge<br>Case No. 49G04-1312-FB-81688 |

**Robb, Judge.**

## Case Summary and Issue

[1] Following a jury trial, Gary Wright was convicted of burglary as a Class B felony and theft as a Class D felony. The trial court sentenced Wright to an

aggregate sentence of thirteen years in the Department of Correction. Wright appeals, raising the following issue for our review: whether the trial court abused its discretion by admitting the statements he made to the police after invoking his right to counsel. Concluding Wright reinitiated communication with the police and validly waived his right to counsel, we affirm.

# Facts and Procedural History

On the morning of December 31, 2013, Amanda Pritchard left her house to go to work. Around 2:00 p.m. that day, Leisha Manges, Pritchard's neighbor, called the police to report a possible burglary. Manges saw a white male later identified as Wright exiting Pritchard's house with televisions and other items in hand. Wright passed the items across the fence to a black male later identified as Laron Garrett. After Manges positively identified Wright and Garrett as the men she saw taking items from Pritchard's house, both men were arrested and transported to the police station for questioning.

Detective Cheryl Anderson interviewed Wright at the police station. Prior to any questioning, Detective Anderson advised Wright of his *Miranda* rights. Wright indicated that he understood his rights and signed a written waiver. Once Wright signed the waiver, Detective Anderson began questioning him about the burglary, and he answered her questions until she asked, "[O]nce you went inside what'd you do?" State's Exhibit 27A at 5. To that question Wright responded, "I don't think I should. I think I should talk to an attorney." *Id.*

[4] Detective Anderson terminated the interrogation as soon as Wright requested an attorney. She said, "OK, all right, good enough," *id.*, and left the room. Less than thirty seconds later, Wright changed his mind, began knocking on the door, and shouted, "Hey sergeant come in here I'll talk. Come in here. I'll talk. Come on, I'll . . . come in here, I'll . . . tell you everything." *Id.* at 6; State's Exhibit 27. Detective Anderson immediately returned, and the following exchange took place:

> [Detective Anderson:] Alright, now Gary don't be yankin' my chain now.
> [Wright:] I'm not ma'am.
> [Detective Anderson:] I don't got time for that.
> [Wright:] I'll tell you everything. . . .

State's Ex. 27A at 6.

[5] First, Wright asked what charges he was facing and whether he was "the only one bein' charged. . . ." *Id.* Detective Anderson informed Wright of the charges and assured him that Garrett would also be charged. *Id.* at 6-7. Then, Wright admitted that he and Garrett took "valuables" from Pritchard's house. *Id.* at 7. When Detective Anderson asked what kind of valuables, Wright refused to answer the question. *Id.* Detective Anderson accepted that response and did not push Wright for an answer. The interview concluded less than a minute later, lasting just under eight minutes from start to finish, including the initial advisement of rights. Wright told Detective Anderson to "Have a good day" as she was exiting the room. *Id.* at 8.

Wright was charged with burglary as a Class B felony, theft as a Class D felony, possession of a controlled substance as a Class D felony, and criminal mischief as a Class B misdemeanor. Prior to trial, Wright filed a motion to suppress the statements he made to Detective Anderson after invoking his right to counsel. The trial court denied the motion, and the case proceeded to trial. The State moved to dismiss the possession of a controlled substance and criminal mischief charges the morning of trial. The trial court granted the State's motion, and a jury found Wright guilty of the remaining charges. The trial court sentenced Wright to thirteen years executed in the Department of Correction for burglary, to be served concurrently with a two year executed sentence for theft. This appeal followed.

# Discussion and Decision

## I. Standard of Review

Wright claims that the trial court abused its discretion by admitting the statements he made to Detective Anderson after invoking his right to counsel. The decision to admit a defendant's statement is within the discretion of the trial court and will not be disturbed absent an abuse of that discretion. *Ringo v. State*, 736 N.E.2d 1209, 1211 (Ind. 2000) (citation omitted). When a defendant challenges the admissibility of his confession, the State must prove beyond a reasonable doubt that the statement was free and voluntary and not induced by violence, threats, promises, or improper influences. *Jackson v. State*, 735 N.E.2d 1146, 1153 (Ind. 2000). The same test determines whether a defendant's

*Miranda* rights were voluntarily waived. *Carter v. State*, 730 N.E.2d 155, 157 (Ind. 2000). In reviewing the trial court's decision to admit a defendant's statement, "we do not reweigh the evidence but instead examine the record for substantial probative evidence of voluntariness." *Ringo*, 736 N.E.2d at 1211.

## II. Admission of Evidence

[8] The Fifth Amendment, applicable to the states by virtue of the Fourteenth Amendment, provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself. . . ." *Hartman v. State*, 988 N.E.2d 785, 788 (Ind. 2013) (quoting U.S. Const. amend. V). To protect the privilege against self-incrimination, the U.S. Supreme Court in *Miranda v. Arizona* held that a person must be warned, prior to any questioning, that he has the right to remain silent, that he has a right to the presence of an attorney, and that any statement he does make may be used as evidence against him. 384 U.S. 436, 444 (1966). A defendant waives his *Miranda* rights when, after being advised of those rights and acknowledging an understanding of them, he proceeds to make a statement without taking advantage of his *Miranda* rights. *Crain v. State*, 736 N.E.2d 1223, 1230 (Ind. 2000).

[9] Even if a defendant elects to waive his *Miranda* rights, the waiver may be rescinded at any time. *Carr v. State*, 934 N.E.2d 1096, 1102 (Ind. 2010). If a defendant asserts the right to counsel during interrogation, the police must cease questioning until counsel is present or the defendant reinitiates communication and waives the right to counsel. *Osborne v. State*, 754 N.E.2d

916, 922 (Ind. 2001). Standing alone, the defendant's initiation of further conversation is not sufficient to establish a waiver of the previously asserted right to counsel. *Id.* If a defendant is found to have reinitiated communication with the police, the subsequent inquiry is whether there was a valid waiver of the right to counsel—that is, whether the purported waiver was knowing, voluntary, and intelligent, and found to be so under the totality of the circumstances. *See id.* at 922-23. The "totality of the circumstances" test focuses on "the entire interrogation, not on any single act by police or condition of the suspect." *Washington v. State*, 808 N.E.2d 617, 622 (Ind. 2004).

[10] In the present case, Wright was fully advised of his rights at the beginning of the interview, stated that he understood his *Miranda* rights, and signed a written waiver. After a few minutes of questioning, Wright invoked his right to counsel, and Detective Anderson immediately terminated the interview. Less than thirty seconds later, however, Wright changed his mind and reinitiated communication. He told Detective Anderson to come back and said, multiple times, that he wanted to talk and would tell her "everything." State's Ex. 27A at 6. The second part of the interview began with Detective Anderson answering Wright's questions. And when Wright refused to answer a question regarding what sort of valuables were taken, Detective Anderson moved on to a different question. After less than eight total minutes of interrogation, the

interview concluded with Wright telling Detective Anderson to "[h]ave a good day." *Id.* at 8.[1]

[11] Wright argues that factors such as "the cold room, anemia, head injury, a desire for credit time, lack of understanding criminal charges, or a desire to be unchained influenced the voluntariness of his statement." Brief of Appellant at 12. Wright does not explain how these factors influenced the voluntariness of his waiver, and presumably all of these factors existed, to the extent they did exist, during the first part of the interview. Because Wright does not dispute the voluntariness of his initial *Miranda* waiver, and we look to the "entire interrogation" in evaluating voluntariness, we are not persuaded that these factors rendered his subsequent waiver involuntary. *See Washington*, 808 N.E.2d at 622. Furthermore, other than Wright's brief remarks at the beginning of his interview with Detective Anderson, there is no evidence to establish that the interrogation room was unreasonably cold, that Wright was in fact anemic, or that Wright had an incapacitating head injury.[2] As to a desire for credit time,

---

[1] Both this conduct and the subsequent conduct of Detective Anderson in her continuing interrogation of Wright were exemplary.

[2] At the beginning of the interview, the following exchange took place:

>   [Detective Anderson:]   Alright Gary get your feet down off my table.
>
>   [Wright:]   Oh I'm sorry.  I'm, I'm freezing and I'm, I'm anemic.
>
>   [Detective Anderson:]   I realize it's cool in here.
>
>   [Wright:]   Huh?
>
>   [Detective Anderson:]   I know it's cool in here.
>
>   [Wright:]   Cool?  It ain't cool.
>
>   [Detective Anderson:]   Uhh huh.  What happened to your head[?]

Detective Anderson never suggested that Wright would get good time credit if he waived his right to counsel. Regarding his purported lack of understanding regarding the charges, Detective Anderson answered Wright's questions and explained the charges. Finally, Wright asked Detective Anderson to remove the leg irons as she was exiting the interrogation room, after the interview was over. Detective Anderson never suggested that the leg irons would be removed if he answered her questions.

[12] Based on the totality of the circumstances, Wright knowingly, voluntarily, and intelligently waived his right to counsel following his request for an attorney. There is no evidence that Wright lacked the capacity to understand his rights, and at no point did Detective Anderson threaten, intimidate, deceive, or make promises in order induce Wright to continue the interview. *See Jackson*, 735 N.E.2d at 1153-54. Almost immediately after requesting an attorney, Wright unequivocally expressed his desire to resume the interview and tell Detective Anderson "everything." State's Ex. 27A at 6. Likewise, the decision to waive his right to counsel was an informed one. Wright had been fully advised of his rights just minutes before, and there was no need to reiterate the rights that he

---

[Wright:] Got beat up.

[Detective Anderson:] Oh ok, who beat you up?

[Wright:] Somebody.

State's Ex. 27A at 2. There is no evidence that the "head injury" was recent or affected Wright's mental capacity. But even if the injury did affect his mental capacity, our supreme court has stated that "[a] defendant's mental condition alone does not render a confession involuntary." *Rhodes v. State*, 698 N.E.2d 304, 308 (Ind. 1998). Rather, a defendant must also allege police misconduct. *Id.* Here, Wright does not allege any police misconduct.

would be waiving by answering questions without an attorney present. *Cf. Ogle v. State*, 698 N.E.2d 1146, 1148-49 (Ind. 1998) (concluding that a second *Miranda* warning was not required where the police stopped the interrogation and questioning resumed less than an hour later). We therefore conclude the trial court did not abuse its discretion by admitting the statements Wright made to the police after invoking his right to counsel.

# Conclusion

[13] Wright reinitiated communication with the police after requesting an attorney, and based on the totality of the circumstances, knowingly, voluntarily, and intelligently waived his right to counsel. For these reasons, the trial court did not abuse its discretion by admitting the statements Wright made to Detective Anderson. We therefore affirm his convictions.

[14] Affirmed.

May, J., and Mathias, J., concur.